# EXHIBIT H

**From:** "Sholey, Jeff" <Jeff.Sholey@corizonhealth.com>
**To:** "King, Scott" <Scott.King@corizonhealth.com>
**Cc:** "Hyman, James" <James.Hyman@corizonhealth.com>
**Subject:** Re: Logic for 363 Incentives
**Date:** Mon, 9 Aug 2021 23:34:35 +0000
**Importance:** Normal
**Inline-Images:** image001.png

---

That is why I want to verify that the debt would revert to an unsecured claim versus just go away. If it reverts to an unsecured claim then Flacks would still represent a large percentage of the unsecured claims and therefore receive a pro rata portion of remainder of funds after priority and admin claims.

Sent from my iPhone

On Aug 9, 2021, at 18:28, King, Scott <Scott.King@corizonhealth.com> wrote:

I went back through my notes and the primary concern is that the secured debt could be re-characterized as equity, in which case the unsecured creditors would be ahead in line. A&P looked at the issue back in May and noted there were several factors weighing in favor of recharaterization. Their position seemed to indicate it was a coin toss on what a court would do on this issue. I do need to go back and check with A&P on whether the court could: (i) recharacterize only part of the debt; or (ii) determine the debt is properly characterized, but determine the principal amount should be reduced by some factor.

**Scott King**
**Chief Legal Officer**

<image001.png>

---

**From:** Sholey, Jeff <Jeff.Sholey@corizonhealth.com>
**Sent:** Monday, August 9, 2021 5:57 PM
**To:** Hyman, James <James.Hyman@corizonhealth.com>
**Cc:** King, Scott <Scott.King@corizonhealth.com>
**Subject:** Re: Logic for 363 Incentives

Key would be classification of the debt. I would like to confirm withA&P what happens if the debt is not upheld. I believe it would just revert to an unsecured claim but not sure.

Sent from my iPhone

On Aug 9, 2021, at 17:43, Hyman, James <James.Hyman@corizonhealth.com> wrote:

Jeff?

James E. Hyman, CEO
Corizon Health
103 Powell Ct, Brentwood, TN 37027
T: +1.615.660.6869| C: +1.203.539.1401
james.hyman@corizonhealth.com

-------- Original message --------
From: "King, Scott" <Scott.King@corizonhealth.com>
Date: 8/9/21 4:29 PM (GMT-05:00)
To: "Hyman, James" <James.Hyman@corizonhealth.com>, "Sholey, Jeff" <Jeff.Sholey@corizonhealth.com>
Subject: RE: Logic for 363 Incentives

I like the plan, but the risk is that Flacks doesn't get credit for the $75mm debt under the credit agreement (believe they paid $1mm for it), which would mean they would only receive remainder on the Seller's Note. Although I think it' more likely they would get partial credit for the debt(I believe that's what Mike Messersmith indicated).

Scott

**Scott King**
**Chief Legal Officer**

<image002.png>

---

**From:** Hyman, James <James.Hyman@corizonhealth.com>
**Sent:** Monday, August 9, 2021 3:09 PM
**To:** Sholey, Jeff <Jeff.Sholey@corizonhealth.com>; King, Scott <Scott.King@corizonhealth.com>
**Subject:** Logic for 363 Incentives

Test my approach here and comment.

At present, under the 363 scenario, likely all the employment contracts get set aside plus there is currently no incentive plan in place for mgmt – either a deal team, the EC or others with 1yr EE agreements. And, if Flacks gets credit for the secured debt or a significant portion of it, they could get paid out something while mgmt not only doesn't get anything, they don't even get their severance. If so, there is no incentive for mgmt to try and get a 363 sale that recovers anything over just a liquidation, and in a 363 there is no incentive to negotiate with stalking horse for a higher amount payment to the estate to settle with creditors.

But, let's consider the economics of a 363 sale whereby someone like HIG could get contribution net of synergies and PLI carryover of $10-15mm/yr. Even at a 2x multiple, with the current cash profile, that would leave a surplus beyond the priority claims and admin claims of potentially >$10mm.

If we divide mgmt into two groups: a) deal team of the three of us (plus potentially Christine or Mover if there's some heavy lifting from them) and b) rest of EE agreement mgmt (EC plus Pastor, Silva). The severance for mgmt is ~$4.4mm (Deal team small: $2mm, EC plus: $2.4mm) which is just about the same amount of cash that Flacks had to pay to buy the note from the banks.

What if we make the following proposal to Flacks:
For any recovery to the secured group or flacks, 50% goes to Flacks and 50% goes to mgmt up until mgmt severance is fully paid.
Once mgmt severance is paid at the level of their EE agreements, then for the deal team, Flacks receives 80% and the deal team receives 20%.

Structure
Presumably, this would have to be a side-agreement with Flacks or the entity holding the secured debt and note rather than a company agreement.
The payout within the mgmt group is distributed pro-rata to their salary levels
Any member of the mgmt group who receives employment from the buyer or where the buyer assumes their EE agreement is subtracted from the payout to the mgmt group.

In addition, since the EE agreements are likely going to be set aside, there is no non-compete and non-solicit for the buyer. It's possible that buyer might want to pay those with EE agreements something to get a release plus non-compete and non-solicit. The amount above to mgmt could also be adjusted downwards for any such payment to the mgmt group.

Thoughts?

James

James E. Hyman, CEO
**Corizon Health**
103 Powell Ct, Brentwood, TN 37027
T: +1.615.660.6869 | C:+1.203.539.1401
James.Hyman@CorizonHealth.com
<image003.png>

CORIZON HEALTH