# EXHIBIT K

FTI CAPITAL ADVISORS

FTI Capital Advisors, LLC is a member of FINRA/SIPC.

May 1, 2022

Board of Directors
Valitás Health Services, Inc.
Corizon Health, Inc.
103 Powell Court
Brentwood, Tennessee 37027

Ladies and Gentlemen:

We understand that Corizon Health, Inc. (the "Company") is contemplating a series of transactions that would separate the Company into two distinct entities (the "Transaction"). Specifically, we understand that the Transaction consists of (a) a multi-party combination merger under the laws of the State of Texas (the "Combination Merger") by and among the Company, Valitás Health Services, Inc., a Texas corporation and the Company's direct parent ("Valitás"), Corizon, LLC, a Missouri limited liability company and a wholly-owned subsidiary of the Company ("Corizon"), and Corizon Health of New Jersey, LLC, a New Jersey limited liability company and a wholly-owned subsidiary of the Company ("Corizon NJ", together with the Company, Valitás, and Corizon are the "Merging Entities") pursuant to which (i) Valitás, Corizon, and Corizon NJ shall terminate upon consummation of the Combination Merger and (ii) the Company shall survive the Combination Merger and continue its existence under the laws of the State of Texas, (b) a divisional merger under the laws of the State of Texas (the "Divisional Merger") immediately following the Combination Merger, pursuant to which: (i) the Company shall survive the Divisional Merger and continue its existence under the laws of the State of Texas ("RemainCo"); (ii) a new corporation shall be created under, and be governed by, the laws of the State of Texas ("NewCo"); and (iii) the assets and liabilities of the Company will be allocated and vested in RemainCo or NewCo as further described below; (c) at the consummation of the Divisional Merger, RemainCo, as payee, will enter into a funding agreement (the "Funding Agreement") with M2 LoanCo, LLC, a Delaware limited liability company and a wholly owned subsidiary of the ultimate parent of the Company ("M2 LoanCo"), as payor; and (d) at the consummation of the Divisional Merger, NewCo will enter into a management services agreement with Geneva Consulting LLC, a Delaware limited liability company.

We understand that NewCo will, as a general matter, among other things: (i) receive all assets used in, or necessary to, the service of any active and unexpired customer contracts (with the exception of substantially all vendor contracts to which the Company or any of its subsidiaries is a party); (ii) receive all liabilities and obligations to unsecured creditors of the Company in connection with the assets referenced in clause (i), including, but not limited to, all costs, expenses and liabilities not allocated to RemainCo in connection with such active customer contracts (*e.g.*, medical malpractice, errors and omissions, and other litigation claims (whether or not such claims have yet been asserted)); and (C) assume all obligations under the senior secured credit facilities provided to the Company pursuant to that certain Third Amended and Restated Credit Agreement dated as of August 17, 2020 (as amended, amended and restated, or otherwise modified from time to time, the “Existing Secured Debt”).

We also understand that, as a result of the Transaction, RemainCo will, among other things: (i) be allocated and remain vested with assets that have been disclosed in writing to FTI and that include, but are not limited to, $1.0 million of cash, the right to draw under the Funding Agreement, substantially all vendor contracts to which the Company or any of its subsidiaries is a party, all customer contracts that have expired or terminated to which the Company or any of its subsidiaries is a party, and the rights to make claims on any and all of the Company’s and its subsidiaries’ medical malpractice, general liability or errors and omissions insurance policies solely to the extent such claims relate to liabilities vested in RemainCo, including medical malpractice and other litigation claims in connection with the foregoing contracts; (ii) be allocated and remain vested with all liabilities and obligations to RemainCo Unsecured Creditors in connection with or arising from or pertaining to the foregoing assets or liabilities, including, but not limited to, all costs, expenses and liabilities in connection with the foregoing contracts (*e.g.*, claims of trade creditors and medical malpractice and other litigation claims (whether or not such claims have yet been asserted)) and liabilities with respect to terminated employees of the Company; and (iii) have no liability under or in connection with the Existing Secured Debt.

We have been requested by members of the Board of Directors of the Company to render our opinion to it as to the fairness of the Transaction, from a financial point of view, to the unsecured creditors of RemainCo (“RemainCo Unsecured Creditors”), as compared to a scenario in which the Transaction does not occur and instead there is a restructuring of the Company, whether in or out of court (a “Restructuring”) (the “Fairness of the Transaction”).

In arriving at our opinion, we reviewed and discussed with the Company and its counsel, among other things:

(i) Third Amended and Restated Credit Agreement dated as of August 17, 2020 and drafts of the Fourth Amendment and the Fifth Amendment, Assignment, Assumption, Waiver and Release to such Third Amended and Restated Credit Agreement;

(ii) recent historical financial information of the Company, including (i) the Company's financial statements for the fiscal years ended December 31, 2018 through December 31, 2021;

(iii) certain internal financial analyses and forecasts for the Company for the fiscal years ending December 31, 2022 through December 31, 2026 prepared by management of the Company and provided to us in writing (the "Forecast");

(iv) a full and complete schedule of the identified contingent liabilities of the Company as of the date hereof;

(v) an accurate balance sheet of each of the Company and of RemainCo immediately before and after giving effect to the consummation of the Transaction;

(vi) detail on the amount of accounts receivable and insurance proceeds of RemainCo that are expected to be collected, as provided by management of the Company;

(vii) reviewed the letter, dated as of the date hereof, from management of the Company to FTICA containing certain representations, including but not limited to representations as to historical financial statements, financial projections and their underlying assumptions, the pro forma schedule of assets and liabilities of each of the Company and of RemainCo immediately before and after giving effect to the consummation of the Transaction and obligations of the Company under existing credit agreements (the "Management Representation Letter"); and

(viii) that certain memorandum, dated as of April 30, 2022, from White & Case LLP to the Boards of Directors of Valitás Health Services, Inc. and Corizon Health, Inc., which summarizes the Existing Secured Debt and the collateral securing the obligations thereunder.

In addition, we have had discussions with the management of the Company concerning the Company's business, operations, assets, liabilities, financial condition and prospects and undertaken such other studies, financial analyses and investigations, as we deemed appropriate.

In arriving at our opinion, with relied upon and assumed the accuracy and completeness of the financial and other information and data furnished to or disclosed to us by, or on behalf of, the Company (including any materials prepared by third parties and provided to FTICA by or on behalf of the Company) or that were reviewed by us, and we have not assumed and we do not assume any responsibility or liability for independently verifying such information. In arriving at our Opinion as set forth herein, we have relied upon and assumed the representations of the Company, including management of the Company, as set forth in greater detail in the Management Representation Letter, including but not limited to the representations of management that they are not aware of any facts or circumstances that would make such information inaccurate or misleading. We have assumed that the Forecast has been reasonably prepared on a basis reflecting the best currently available estimates and judgments of the management of the Company. We assume no responsibility for, and we express no view as to, the Forecast, estimates or the assumptions on which it is based, or any other representation from management or from the Company. In arriving at our opinion, we have not conducted a physical inspection of the properties and facilities of the Company or any subsidiaries and have not made or obtained any valuations or appraisals of the assets or liabilities of the Company or any subsidiaries. Our opinion necessarily is based upon financial, market, economic and other conditions as they exist on, and can be evaluated as of, the date of this opinion. We assume no responsibility for updating or revising our opinion based on events or circumstances that may occur after the date of this opinion. Furthermore, we have not evaluated, and are not opining on, the solvency of the Company and its subsidiaries under any laws relating to bankruptcy, insolvency or similar matters.

With respect to the Existing Secured Debt, we have assumed that (i) it is valid and enforceable in accordance with its terms, substantially all of the assets of the Company are pledged to the holders of the Existing Secured Debt; (ii) the liens and security interests of the holders of the Existing Secured Debt on substantially all of the assets of the Company are attached, perfected, valid and enforceable except as otherwise expressly stated herein; (iii) except for the account held by Corizon at Signature Bank (the "Account"), all material bank accounts have perfected liens and blocked account control agreements; and (iv) the lien rights of the Existing Secured Debt holders are senior to all other liabilities of the Company and are not subject to any defenses or set offs.

We have relied on and assumed that the composition of assets and liabilities to be contributed to RemainCo in the Transaction will be as set forth in the information provided to us in writing by the Company. With respect to the Funding Agreement, we have assumed and relied on representations from management of the Company, that M2 LoanCo has or will have at the consummation of the Divisional Merger sufficient unrestricted and unencumbered cash available to it to fully fund up to $15 million to RemainCo; that when called upon to fund RemainCo, M2

LoanCo will promptly meet its funding commitments to RemainCo, and that such funding will be available to RemainCo to be applied to RemainCo working capital requirements as well as for the benefit of RemainCo Unsecured Creditors; and that there are no conditions imposed on RemainCo that would materially restrict RemainCo's right to draw on the Funding Agreement.

We have assumed that (i) in the event of a Restructuring in which the Company's subsidiary, Corizon, became a debtor in a bankruptcy case, if the assets of Corizon available to satisfy the existing secured debt would not be adequate to fully satisfy the secured debt, the secured creditors would have a deficiency claim that would be treated as an unsecured liability of Corizon; (ii) in such event, the aforesaid deficiency claim, as an unsecured liability, would be added to the total amount of other unsecured claims against Corizon; (iii) such additional unsecured claims of the secured creditors therefore would dilute what might otherwise be available to the other unsecured creditors of Corizon in the absence of such a deficiency claim; and (iv) in the event of such a Restructuring, cash from the Account would be available and used, in whole or in part, to pay administrative expenses of the Restructuring and to satisfy creditor claims against Corizon.

We have also assumed that (i) none of the Company, any of the Company's affiliates (other than Corizon), or any unsecured creditors of the Company or its affiliates (other than unsecured creditors of Corizon) have or will have a valid claim to recover against the cash in the Account, including but not limited to claims in the nature of claw-backs, fraudulent or preferential transfers, recharacterization, equitable subordination, or other avoidance or similar proceedings; (ii) that following the Transaction RemainCo will no longer have any material secured creditors; (iii) the Transaction will not adversely impact the availability of insurance coverage under the Company's medical malpractice, general liability or errors and omissions insurance policies or impair RemainCo's rights or the rights of RemainCo's unsecured creditors to rely on and obtain recovery pursuant to such insurance policies; and (iv) RemainCo will need to fund its own operations for no longer than three to four years following the completion of the Transaction.

We have also assumed that all material governmental, regulatory and third-party approvals, consents and authorizations and releases necessary for the consummation of the Transaction will be obtained prior to completion of the Transaction and within the time frames reasonably contemplated by the parties to the Transaction. We do not express any opinion as to legal, regulatory, tax or accounting matters, as to which we understand the Company has obtained such advice as it deemed necessary from qualified professionals.

We have been informed that NewCo intends to enter into a subsequent transaction immediately following the consummation of the Transaction, which subsequent transaction is likely to be structured as an acquisition of NewCo, and that the consideration for such subsequent

transaction is likely to be comprised primarily of the assumption of the obligations and liabilities of NewCo (the "Subsequent Transaction"). The scope of our engagement does not include a review or evaluation of the Subsequent Transaction or any other possible subsequent transaction involving NewCo or its assets and liabilities. Without limitation to the foregoing, our opinion is rendered as of the moment in time when the Transaction is consummated, and prior to the consummation of any other transaction, including the Subsequent Transaction. We have not provided any advice, recommendations, or opinion with respect to the possible Subsequent Transaction.

Other than the Fairness of the Transaction, we express no view as to, and our opinion does not address, any terms or other aspects or implications of the Transaction or any aspect or implication of any other agreement, arrangement or understanding entered into or to be entered into in connection with the Transaction, including, without limitation, the fairness of the amount or nature of the compensation resulting from the Transaction to any officers, directors or employees of the Company, or any class of such persons. In addition, we express no view as to, and our opinion does not address, the current or future price or current or future value of any equity interests in the Company or of any assets of the Company, the underlying business decision of the Company to proceed with or effect the Transaction nor does our opinion address the relative merits of the Transaction as compared to any alternative business strategies (other than any Restructuring, solely in respect of the Fairness of the Transaction) that might exist for the Company or the effect of any other transaction (other than any Restructuring, solely in respect of the Fairness of the Transaction) in which the Company may engage. Where, in this opinion, we state that we assume certain matters or that our opinion is based on certain assumptions, in each instance, such assumptions by us are made with your acknowledgement and without independent verification by us.

Based upon and subject to the foregoing, we are of the opinion that the Transaction is fair, from a financial point of view, to the RemainCo Unsecured Creditors as compared to a scenario in which the Transaction does not occur and instead there is a Restructuring. Our opinion is based on the terms described to us by the Company. Other than the Fairness of the Transaction, we express no opinion on any definitive transaction documents.

Pursuant to and subject to the terms of our engagement letter, we will receive a fee for our services in connection with this opinion, a portion of which is payable upon rendering this opinion, and the Company has agreed to reimburse our expenses and indemnify us for certain liabilities that may arise out of our engagements. FTI Capital Advisors is a wholly-owned subsidiary of FTI Consulting, Inc. ("FTI"). Neither FTICA nor FTI has performed any services to the Company or its affiliates during the past two years.

FTI, its subsidiaries, including FTICA, and its affiliates engage in a wide range of businesses from financial restructuring, transaction advisory, investment banking, asset management and other financial and non-financial advisory services. In the ordinary course of our business, we and our affiliates may actively advise our customers with respect to trades or other transactions in equity, debt and/or other securities (and any derivatives thereof) and financial instruments (including loans and other obligations).

This opinion, the issuance of which has been approved by our Fairness Committee, is strictly for the use and benefit of the Board of Directors of the Company and is rendered to such Board of Directors in connection with its consideration of the Transaction. This opinion is not intended to be and does not constitute a recommendation to any equity-holder or noteholder of the Company as to how such equity-holder or noteholder should proceed with respect to the Transaction.

Very truly yours,

FTI Capital Advisors, LLC

FTI Capital Advisors, LLC