# EXHIBIT Q

# UNANIMOUS WRITTEN CONSENT

# OF

# THE BOARD OF DIRECTORS

# OF

# VALITÁS INTERMEDIATE HOLDINGS, INC.

The undersigned, being all of the directors of Valitás Intermediate Holdings, Inc., a Delaware Corporation (the "**Corporation**"), acting by written consent pursuant to Section 141(f) of the Delaware General Corporation Law, do hereby consent to the adoption of the following resolutions on this day of April 29, 2022 and direct that this consent be filed with the minutes of the proceedings of the board of directors of the Corporation:

**WHEREAS**, the board of directors deems it advisable and in the best interest of the Corporation to execute a Fourth Amendment and Waiver to the Third Amended and Restated Credit Agreement in substantially the from attached hereto as Exhibit A (the "**Credit Agreement Amendment**");

**NOW THEREFORE LET IT BE:**

**RESOLVED**, that the Credit Agreement Amendment be, and it hereby is, authorized and approved; and further

**RESOLVED**, that the officers of the Corporation be, and each them individually hereby is, authorized and empowered to do and perform or cause to be done and performed all such acts, deeds and things, and to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, undertakings, documents, instruments or certificates in the name of the Corporation and to retain such counsel, agents and advisors and to incur and pay such expenses, fees and taxes as shall, in the opinion of the officers of the Corporation executing the same, be deemed necessary or advisable (such necessity or advisability to be conclusively evidenced by the execution thereof) to effectuate or carry out fully the purpose and interest of all of the foregoing resolutions; and that any and all such actions heretofore or hereafter taken by the officers relating to and within the terms of these resolutions be, and they hereby are, adopted, affirmed, approved and ratified in all respects as the act and deed of the Corporation; and

**RESOLVED**, that an executed copy of this Unanimous Written Consent shall be filed with the minutes of the proceedings of the board of directors.

This Unanimous Written Consent may be signed in two or more counterparts, each of which shall be deemed an original, and all of which shall be deemed one instrument.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the undersigned directors have duly executed this Unanimous Written Consent as of the date first written above.

____________________________
Abe Goldberger, Chair

____________________________
David Gefner

____________________________
Isaac Lefkowitz

**IN WITNESS WHEREOF**, the undersigned directors have duly executed this Unanimous Written Consent as of the date first written above.

____________________________

Abe Goldberger, Chair

____________________________

David Gefner

____________________________

Isaac Lefkowitz

**IN WITNESS WHEREOF**, the undersigned directors have duly executed this Unanimous Written Consent as of the date first above written.

______________________________
Abe Goldberger, Chair

______________________________
David Gefner

______________________________
Isaac Lefkowitz

# **Exhibit A**

## CREDIT AGREEMENT AMENDMENT

[See attached.]

**FOURTH AMENDMENT AND WAIVER**
**TO**
**THIRD AMENDED AND RESTATED CREDIT AGREEMENT**

This FOURTH AMENDMENT AND WAIVER TO THIRD AMENDED AND RESTATED CREDIT AGREEMENT (this "Amendment"), dated as of April 29, 2022, is entered into by and among Valitás Health Services, Inc., a Delaware corporation (the "Company"), Corizon, LLC (successor by conversion of Corizon, Inc.), a Missouri limited liability company ("Corizon"), Corizon Health, Inc. (formerly known as Prison Health Services, Inc.), a Delaware corporation ("Corizon Health,", together with the Company and Corizon, the "Borrowers"), Valitás Intermediate Holdings, Inc., a Delaware corporation ("Holdings"), Cortland Capital Market Services LLC, as Administrative Agent, and each of the Lenders.

**RECITALS:**

WHEREAS, the Borrowers, Holdings, the Administrative Agent and the Lenders entered into that certain Third Amended and Restated Credit Agreement, dated as of August 17, 2020 (as amended by the First Amendment, dated as of July 12, 2021, the Second Amendment, dated as of July 12, 2021, and the Third Amendment, dated as of September 30, 2021, the "Existing Credit Agreement"; as amended by this Amendment and as may be further amended, restated, amended and restated, supplemented or modified from time to time, the "Credit Agreement"), pursuant to which the Lenders made available Loans to the Original Borrowers in accordance with the terms and conditions thereof;

WHEREAS, on the date hereof, immediately prior to giving effect to this Amendment, the aggregate outstanding principal amount of the Initial Term Loans was $95,900,187.03, and the aggregate amount of accrued and unpaid interest in respect of the Initial Term Loans was $1,178,107.16; and

WHEREAS, the parties hereto (which include all of the Lenders as of the date hereof) wish to amend the Existing Credit Agreement on the terms set forth herein.

**AGREEMENTS:**

NOW, THEREFORE, in consideration of the foregoing and the agreements, representations, warranties, promises and covenants set forth below, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 1. Defined Terms. All capitalized terms which are not defined hereunder shall have the same meanings as set forth in the Existing Credit Agreement.

Section 2. Waiver. Subject to the satisfaction of the conditions precedent set forth in Section 6 hereof, the Administrative Agent and the Lenders hereby irrevocably and forever waive any Default and/or Event of Default that has occurred prior to the Fourth Amendment Effective Date. The foregoing waiver and consent is a limited, one-time waiver and consent and, except as expressly set forth herein, shall not be deemed to: (i) constitute a waiver of any future Default, Event of Default, mandatory prepayment or any other breach of any Loan Documents, hereafter arising, or (ii) establish a custom or course of dealing or conduct between Administrative Agent and the Lenders, on the one hand, and Holdings, the other Guarantors and the Borrowers on the other hand. The foregoing waiver and consent shall not be deemed to constitute a consent to any other act, omission or any future breach of any of the Loan Documents.

Section 3. Amendments to the Existing Credit Agreement. Effective as of the Fourth Amendment Effective Date, and subject to the terms and conditions set forth in this Amendment, each of the parties hereto agrees that the definition of "Maturity Date" in the Existing Credit Agreement shall be

amended and restated in its entirety to read: "Maturity Date" means February 26, 2024."

Section 4. Prepayment. On the Fourth Amendment Effective Date the Borrowers shall make an optional prepayment in an aggregate amount equal to $4,500,000, which prepayment shall be applied first to the accrued and unpaid interest on the Initial Term Loans and second to the outstanding principal of the Initial Term Loans. After giving effect to such prepayment, the aggregate outstanding principal amount of the Initial Term Loans is $92,578,294.19 and the aggregate amount of accrued and unpaid interest is $0. Each Lender and the Administrative Agent (acting at the direction of the Lenders) hereby waive the requirements set forth in Section 2.03(a) of the Credit Agreement with respect to the prepayment described in this Section 4.

Section 5. Representations and Warranties. To induce the Administrative Agent and the Lenders to enter into this Amendment, the Borrowers and Holdings represent and warrant that as of the Fourth Amendment Effective Date, after giving effect to this Amendment:

(a) Representations and Warranties. The representations and warranties of the Borrowers and Holdings set forth in the Existing Credit Agreement and the other Loan Documents are true and correct in all material respects (except to the extent such representation or warranty is already qualified by materiality or the occurrence of a Material Adverse Effect) as of the date hereof, except to the extent such representations and warranties refer to an earlier date, in which case such representations and warranties are true and correct in all material respects (except to the extent such representation or warranty is already qualified by materiality or the occurrence of a Material Adverse Effect) as of such earlier date.

(b) No Default or Event of Default. No Default or Event of Default has occurred and is continuing.

(c) Corporate Authority. (i) The Borrowers and Holdings have the right and power and are duly authorized to execute this Amendment and to perform and observe the provisions of this Amendment, (ii) this Amendment has been duly executed and delivered by the Borrowers and Holdings and is the legal, valid and binding obligation of the Borrowers and Holdings, enforceable against the Borrowers and Holdings in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting the enforceability of creditors' rights generally and to general principles of equity, and (iii) the execution, delivery and performance by the Borrowers and Holdings of this Amendment do not and will not (A) contravene the terms of any of such Person's Organization Documents; (B) conflict with or result in any breach or contravention of, or the creation of any Lien (other than Liens permitted under Section 7.01 of the Credit Agreement), or under (1) any Contractual Obligation to which such Person is a party or affecting such Person or the properties of such Person or any of its Subsidiaries or (2) any order, injunction, writ or decree of any Governmental Authority or any arbitral award to which such Person or its property is subject; or (C) violate any Law, except in each case referred to in clause (B)(1), (B)(2) or (C), to the extent that such contravention, conflict, breach or violation could not reasonably be expected to have a Material Adverse Effect.

Section 6. Conditions to Effectiveness. This Amendment shall become effective as of the first date that each of the following conditions shall have been satisfied or waived (such date, the "Fourth Amendment Effective Date"):

(a) this Agreement shall have been duly executed and delivered by the Borrowers, Holdings, the Administrative Agent and each Lender;

(b) as consideration for the Lender's consent to this Amendment, the Borrowers shall have paid to the Lender an amendment fee (the "Amendment Fee") equal to $5,000,000, which Amendment Fee shall be fully earned, due and payable on the Fourth Amendment Effective Date; and

(c) all fees and other amounts (to include fees of counsel) required to be reimbursed or paid to the Administrative Agent or any Lender shall have been paid.

Section 7. Reference to and Effect on Loan Documents.

(a) On and after the Fourth Amendment Effective Date, each reference in the Existing Credit Agreement to "*this Agreement*", "*hereunder*"", "*hereof*", "*herein*"", or words of like import, and each reference in the other Loan Documents to the Existing Credit Agreement, shall mean, and be a reference to, the Credit Agreement.

(b) The amendment of the Existing Credit Agreement as contemplated by this Amendment shall not be construed to discharge, be a novation of or otherwise affect the Loans or any other obligations of the Borrowers (including the calculation of any amount thereof) accrued or otherwise owing under the Existing Credit Agreement, except as specifically set forth herein, it being understood that such Loans and obligations will constitute Loans and obligations under the Credit Agreement to the extent not otherwise repaid.

(c) This Amendment is a Loan Document.

Section 8. Miscellaneous.

(a) Successors and Assigns. This Amendment shall be binding on and shall inure to the benefit of the Borrowers, Holdings, the Administrative Agent and the Lenders and their respective successors and assigns as set forth in the Loan Documents.

(b) Entire Agreement. This Amendment and the Loan Documents, as amended hereby, constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all other understandings, oral or written, with respect to the subject matter hereof.

(c) Reaffirmation. Each of the Borrowers and Holdings (each a "Reaffirming Party") acknowledges and agrees that, after giving effect to this Amendment, all of its respective obligations under the Credit Agreement and the other Loan Documents to which it is a party are reaffirmed, and remain in full force and effect on a continuous basis. Each Reaffirming Party acknowledges that the obligations and liabilities of the Borrowers under, and as defined in, the Existing Credit Agreement continue in full force and effect on a continuous basis as obligations and liabilities of the Borrowers under, and as defined in, the Credit Agreement. As of the Fourth Amendment Effective Date, each Reaffirming Party reaffirms each Lien it granted to the Administrative Agent, and any Liens that were otherwise created or arose under each of the Loan Documents to which such Reaffirming Party is party to and reaffirms the guaranties made in favor of the Administrative Agent under each of the Loan Documents to which such Reaffirming Party is party, which Liens and guaranties shall continue in full force and effect during the term of the Credit Agreement and any amendments, amendments and restatements, supplements or other modifications thereof and shall continue to secure the Obligations (including, for the avoidance of doubt, the repayment of, and related guarantees of, the Initial Term Loans) of the Borrowers, Holdings and the Guarantors from time to time, and secure the obligations of other Reaffirming Parties under any Loan Document, in each case, on and subject to the terms and conditions set forth in the Credit Agreement and the other Loan Documents.

(d) Headings. Section headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

(e) Severability. Wherever possible, each provision of this Amendment shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Amendment shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Amendment.

(f) Counterparts. This Amendment may be executed in any number of separate original counterparts (or telecopied counterparts with original execution copy to follow) and by the different parties on separate counterparts, each of which shall be deemed to be an original, but all of such counterparts shall together constitute one agreement. Delivery of an executed counterpart of a signature page to this Amendment by telecopy or pdf format shall be effective as delivery of a manually executed counterpart of this Amendment. The words "execution," "signed," "signature," and words of like import in this Amendment shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

(g) Incorporation of Credit Agreement Provisions. The provisions contained in Section 10.14 (Governing Law; Jurisdiction; Etc.) and Section 10.15 (WAIVER OF JURY TRIAL) of the Credit Agreement are incorporated herein by reference to the same extent as if reproduced herein in their entirety.

(h) Lender Direction. The Lenders hereby authorize and direct the Administrative Agent to consent to this Amendment and the Release and to execute and deliver this Amendment and the Release as Administrative Agent.

[remainder of page intentionally left blank; signature pages follow]

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Amendment as of the day and year first above written.

VALITÁS HEALTH SERVICES, INC., as a Borrower

By: ______________________
Name: JEFF SHOLEY
Title: CFO

CORIZON, LLC, as a Borrower

By: ______________________
Name: JEFF SHOLEY
Title: CFO

CORIZON HEALTH, INC., as a Borrower

By: ______________________
Name: JEFF SHOLEY
Title: CFO

VALITÁS INTERMEDIATE HOLDINGS, INC., as Holdings

By: ______________________
Name: Isaac Lefkowitz
Title: Director

CORTLAND CAPITAL MARKET SERVICES LLC,
as the Administrative Agent

By: ______________________________
Name: Pinju Chiu
Title: Associate Counsel

M2 LOANCO, LLC, as a Lender

By: ____________________
Name: Isaac Lefkowitz
Title: Director