# EXHIBIT T

# SEVENTH AMENDMENT TO THIRD AMENDED AND RESTATED CREDIT AGREEMENT

This SEVENTH AMENDMENT TO THIRD AMENDED AND RESTATED CREDIT AGREEMENT (this "Amendment"), dated as of March 5, 2024 but effective as of February 26, 2024, is entered into by and among CHS TX, Inc., a Texas corporation (the "Borrower"), YesCare Corp., a Texas corporation ("Holdings"), Cortland Capital Market Services LLC, as Administrative Agent (the "Administrative Agent"), and each of the Lenders.

## RECITALS:

WHEREAS, Valitás Health Services, Inc., a Texas corporation, Corizon, LLC, a Missouri limited liability company and Corizon Health, Inc., a Texas corporation, as borrowers (collectively, the "Original Borrowers"), Valitás Intermediate Holdings, Inc., a Delaware corporation ("Original Holdings"), the Administrative Agent and the Lenders entered into that certain Third Amended and Restated Credit Agreement, dated as of August 17, 2020 (as amended by the First Amendment, dated as of July 12, 2021, the Second Amendment, dated as of July 12, 2021, the Third Amendment, dated as of September 30, 2021, the Fourth Amendment and Waiver, dated as of April 29, 2022, the Fifth Amendment and Assumption, dated as of May 5, 2022, and the Sixth Amendment, dated December 20, 2023, collectively, the "Existing Credit Agreement"; as amended by this Amendment and as may be further amended, restated, amended and restated, supplemented or modified from time to time, the "Credit Agreement"), pursuant to which the Lenders made available Loans to the Original Borrowers in accordance with the terms and conditions thereof;

WHEREAS, pursuant to the Transaction (as defined in the Fifth Amendment and Assumption), among other things, Original Holdings assigned, and Holdings assumed, all of the rights, obligations and liabilities of Original Holdings under the Existing Credit Agreement and the other Loan Documents;

WHEREAS, pursuant to the Transaction, among other things, the Borrower, as successor in interest to the Original Borrowers, reaffirmed its obligations under the Existing Credit Agreement and the other Loan Documents as a Borrower and assumed all of the obligations of the Original Borrowers under the Existing Credit Agreement;

WHEREAS, various Defaults and/or Events of Default have occurred and are continuing under the Existing Credit Agreement (collectively, and together with any Defaults and/or Events of Default arising therefrom or relating thereto, the "Existing Defaults"); and

WHEREAS, the parties hereto (which include all of the Lenders as of the date hereof), subject to the conditions of this Amendment and the Credit Agreement, wish to waive the Existing Defaults and amend the Existing Credit Agreement on the terms set forth herein.

## AGREEMENTS:

NOW, THEREFORE, in consideration of the foregoing and the agreements, representations, warranties, promises and covenants set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 1. Defined Terms. All capitalized terms which are not defined hereunder shall have the same meanings as set forth in the Credit Agreement.

Section 2. Amendments to the Existing Credit Agreement. Effective as of the Seventh Amendment Effective Date (as defined below), and subject to the terms and conditions set forth in this Amendment, each of the parties hereto agrees as follows:

(a) The definition of "Consolidated EBITDA" in Section 1.01 of the Existing Credit Agreement is hereby deleted in its entirety and the following is hereby substituted therefor:

> "Consolidated EBITDA" means, at any date of determination, an amount equal to Consolidated Net Income of the Company and its Subsidiaries on a consolidated basis for the most recently completed Measurement Period plus (or minus, as applicable) without duplication and to the extent deducted in determining (or, in the case of clause (xi) below, to the extent not included in the determination of) such Consolidated Net Income: (i) Consolidated Interest Expense, (ii) Consolidated Tax Expense, (iii) Consolidated Depreciation Expense, (iv) Consolidated Amortization Expense, (v) any fee, loss, charge, expense, cost, accrual or reserve attributable to the undertaking and/or implementation of any business optimization or any restructuring, provided that the aggregate amount that may be added back for any Measurement Period pursuant to this clause (v) shall not exceed for any Measurement Period the greater of (A) $6,000,000 and (B) 10% of Consolidated EBITDA for that Measurement Period, (vi) non-cash purchase accounting adjustments in accordance with GAAP, (vii) board of director fees and expenses, (viii) reasonable and customary costs, fees and expenses incurred in connection with any amendment, modification or waiver of any provision of any Loan Document or, to the extent permitted hereunder, any Permitted ABL Loan Document or otherwise in connection with the Transactions (including, for the avoidance of doubt and without limitation, the Deferred Payment Notes, Exchange Agreement, Purchase Agreement and Assignment executed in connection with the Fourth Amendment Transactions), including all restructuring costs and expenses incurred in connection with the Transactions, (ix) costs and expenses incurred in connection with any actual or proposed acquisition, merger, joint venture, issuance of equity interests, issuance of Indebtedness or disposition, in each case, permitted hereunder and whether or not consummated, (x) costs and expenses incurred (A) to the extent covered by indemnification or reimbursement provisions in any agreement with a Person that is not an Affiliate of the Company or any of its Subsidiaries in connection with a Permitted Acquisition or (B) to the extent indemnified or reimbursed by a Person that is not an Affiliate of the Company or any of its Subsidiaries and, in each case, only to the extent such costs and expenses are in fact reimbursed by such Person within three months of such incurrence, (xi) the proceeds of business interruption insurance, (xii) post contract termination losses (or minus gains) incurred in connection with the Arizona Customer Contract terminating on June 30, 2019; provided that (A) the aggregate amount of losses that may be added back shall not collectively exceed $250,000 each calendar month, and (B) such losses or gains shall only be added back or subtracted, as applicable, until the month ending December 31, 2019, (xiii) [reserved], (xiv) cost savings and operating expense reductions resulting from divestitures, contract terminations, restructurings, cost savings initiatives and other similar initiatives and

actions, in each case, that were consummated during the applicable Measurement Period, which such cost savings and operating expense reductions are projected by the Company in good faith to be realized within the next eighteen months from such divestiture, contract termination, restructuring, cost savings initiative or other similar initiative or action, net of the amount of actual benefits realized during such period from such actions (calculated on a pro forma basis as though such cost savings and operating expense reductions had been realized on the first day of such period and as if such cost savings and operating expense reductions were realized during the entirety of such period); provided that the aggregate amount of cost savings and operating expense reductions included pursuant to this clause (xiv), shall not exceed the greater of $2,000,000 and 10% of Consolidated EBITDA for such Measurement Period (calculated before giving effect to the addback set forth in this clause (xiv)), (xv) documented bona fide management, consulting, advisory, monitoring or similar services costs, fees and expenses payments to an Affiliate of, or investor in, M2 EquityCo, LLC or M2 LoanCo, LLC (or, in each case, any of their respective successors) for such services, costs, fees or expenses, and (xvi) documented payments to, directly or indirectly, pay administrative or any other ordinary business costs of M2 HoldCo, LLC. Notwithstanding anything to the contrary, subject to any adjustment set forth in the definition of "Pro Forma Basis" in relation to any event occurring after the Third Amendment and Restatement Effective Date, it is agreed that the Consolidated EBITDA for the fiscal quarters ended September 30, 2019, December 31, 2019 and March 31, 2020 shall be $544,000, $611,000 and $1,497,000, respectively.

(b) The definition of "Maturity Date" in Section 1.01 of the Existing Credit Agreement is hereby deleted in its entirety and the following is hereby substituted therefor:

"Maturity Date" means March 1, 2027.

(c) Section 7.11 of the Existing Credit Agreement is hereby deleted in its entirety and the following is hereby substituted therefor:

7.11 Financial Covenant. Permit Consolidated EBITDA for any fiscal quarter ending on the dates set forth below to be less than set forth opposite such date below:

| Fiscal Quarter Ending Date | Amount |
|---|---|
| June 30, 2024 | ($13,000,000) |
| September 30, 2024 | ($5,000,000) |
| December 31, 2024 | $5,000,000 |
| March 31, 2025 | $15,000,000 |
| June 30, 2025 | $19,000,000 |
| September 30, 2025 | $23,000,000 |
| December 31, 2025 | $25,000,000 |
| Thereafter | $25,000,000 |

Section 3. Waiver. Subject to the satisfaction of each of the conditions set forth in Section 5 hereof, effective upon the Seventh Amendment Effective Date, pursuant to Section 10.01 of the Credit

Agreement and subject to the terms and conditions hereof, the Administrative Agent and the Lenders hereby irrevocably and forever waive (the "Waiver") the Existing Defaults. The Waiver set forth in this Section 3 is effective solely for the purposes set forth herein and shall be limited precisely as written and shall not be deemed to (w) waive, release, modify or limit any Loan Party's obligations to otherwise comply with all terms and conditions of the Existing Credit Agreement and the other Loan Documents, (x) except as expressly provided herein, be a consent to any amendment, waiver or modification of any term or condition of the Existing Credit Agreement or of any other Loan Document, (y) waive any Default or Event of Default arising after the Seventh Amendment Effective Date, or (z) prejudice any right or rights that the Administrative Agent or the Lenders may have or may have in the future under or in connection with the Existing Credit Agreement or any other Loan Document, except as expressly provided herein.

Section 4. Representations and Warranties. To induce the Administrative Agent and the Lenders to enter into this Amendment, the Borrower and Holdings represent and warrant that as of the Seventh Amendment Effective Date, after giving effect to this Amendment:

(a) Representations and Warranties. The representations and warranties of the Borrower and Holdings set forth in the Credit Agreement and the other Loan Documents are true and correct in all material respects (except to the extent such representation or warranty is already qualified by materiality or the occurrence of a Material Adverse Effect) as of the date hereof, except to the extent such representations and warranties refer to an earlier date, in which case such representations and warranties are true and correct in all material respects (except to the extent such representation or warranty is already qualified by materiality or the occurrence of a Material Adverse Effect) as of such earlier date; provided, however, the parties hereto acknowledge and agree that such representations and warranties that refer to an earlier date may not be true and correct in all material respects as of the Seventh Amendment Effective Date. The parties hereto agree to reasonably cooperate in good faith to further amend the Credit Agreement to bring current the representations and warranties set forth therein within ninety (90) days of the Seventh Amendment Effective Date; provided, however, the failure to further amend the Credit Agreement to bring current the representations and warranties set forth therein within such ninety (90) day period shall not be deemed a "Default" or an "Event of Default" by any party under the Credit Agreement.

(b) Corporate Authority. (i) The Borrower and Holdings have the right and power and are duly authorized to execute this Amendment and to perform and observe the provisions of this Amendment, (ii) this Amendment has been duly executed and delivered by the Borrower and Holdings and is the legal, valid and binding obligation of the Borrower and Holdings, enforceable against the Borrower and Holdings in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting the enforceability of creditors' rights generally and to general principles of equity, and (iii) the execution, delivery and performance by the Borrower and Holdings of this Amendment do not and will not (A) contravene the terms of any of such Person's Organization Documents; (B) conflict with or result in any breach or contravention, or the creation of any Lien (other than Liens permitted under Section 7.01 of the Credit Agreement), of or under (1) any Contractual Obligation to which such Person is a party or affecting such Person or the properties of such Person or any of its Subsidiaries or (2) any order, injunction, writ or decree of any Governmental Authority or any arbitral award to which such Person or its property is subject; or (C) violate any Law, except in each case referred to in clause (B)(1), (B)(2) or (C), to the extent that such contravention, conflict, breach or violation could not reasonably be expected to have a Material Adverse Effect.

Section 5. Conditions to Effectiveness. This Amendment, including the amendment of the Existing Credit Agreement as set forth in Section 2 hereof, shall become effective as of February 26, 2024 (the "Seventh Amendment Effective Date") upon each of the following conditions being satisfied or waived:

(a) this Amendment shall have been duly executed and delivered by the Borrower, Holdings, the Administrative Agent and each Lender; and

(b) all fees and other amounts (to include fees of counsel) required to be reimbursed or paid to the Administrative Agent or any Lender shall have been paid.

Section 6. Reference to and Effect on Loan Documents.

(a) On and after the Seventh Amendment Effective Date, each reference in the Existing Credit Agreement to "*this Agreement*", "*hereunder*", "*hereof*", "*herein*" or words of like import, and each reference in the other Loan Documents to the Existing Credit Agreement, shall mean, and be a reference to, the Credit Agreement.

(b) The amendment of the Existing Credit Agreement as contemplated by this Amendment shall not be construed to discharge, be a novation of or otherwise affect the Loans or any other obligations of the Borrower (including the calculation of any amount thereof) accrued or otherwise owing under the Existing Credit Agreement, except as specifically set forth herein, it being understood that such Loans and obligations will constitute Loans and obligations under the Credit Agreement to the extent not otherwise repaid.

(c) This Amendment is a Loan Document.

Section 7. Miscellaneous.

(a) Successors and Assigns. This Amendment shall be binding on and shall inure to the benefit of the Borrower, Holdings, the Administrative Agent and the Lenders and their respective successors and assigns as set forth in the Loan Documents.

(b) Entire Agreement. This Amendment and the Loan Documents, as amended hereby, constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all other understandings, oral or written, with respect to the subject matter hereof.

(c) Reaffirmation. Each of the Borrower and Holdings (each, a "Reaffirming Party") acknowledges and agrees that, after giving effect to this Amendment, all of its respective obligations under the Credit Agreement and the other Loan Documents to which it is a party are reaffirmed, and remain in full force and effect on a continuous basis. Each Reaffirming Party acknowledges that the obligations and liabilities of the Borrower under, and as defined in, the Existing Credit Agreement continue in full force and effect on a continuous basis as obligations and liabilities of the Borrower under, and as defined in, the Credit Agreement. As of the Seventh Amendment Effective Date, each Reaffirming Party reaffirms each Lien it granted to the Administrative Agent, and any Liens that were otherwise created or arose under each of the Loan Documents to which such Reaffirming Party is party and reaffirms the guaranties made in favor of the Administrative Agent under each of the Loan Documents to which such Reaffirming Party is party, which Liens and guaranties shall continue in full force and effect during the term of the Credit Agreement and any amendments, amendments and restatements, supplements or other modifications thereof and shall continue to secure the Obligations (including, for the avoidance of doubt, the repayment of, and related guarantees of, the Initial Term Loans) of the Borrower, Holdings and the Guarantors from time to time, and secure the obligations of other Reaffirming Parties under any Loan Document, in each case, on and subject to the terms and conditions set forth in the Credit Agreement and the other Loan Documents.

(d) Headings. Section headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

(e) Severability. Wherever possible, each provision of this Amendment shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Amendment shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Amendment.

(f) Counterparts. This Amendment may be executed in any number of separate original counterparts (or telecopied counterparts with original execution copy to follow) and by the different parties on separate counterparts, each of which shall be deemed to be an original, but all of such counterparts shall together constitute one agreement. Delivery of an executed counterpart of a signature page to this Amendment by telecopy or pdf format shall be effective as delivery of a manually executed counterpart of this Amendment. The words "execution", "signed", "signature" and words of like import in this Amendment shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity and/or enforceability as a manually executed signature or the use of a paper based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

(g) Incorporation of Credit Agreement Provisions. The provisions contained in Section 10.14 (Governing Law; Jurisdiction; Etc.) and Section 10.15 (WAIVER OF JURY TRIAL) of the Credit Agreement are incorporated herein by reference to the same extent as if reproduced herein in their entirety.

(h) Lender Direction. The Lenders hereby authorize and direct the Administrative Agent to consent to this Amendment and to execute and deliver this Amendment as the Administrative Agent.

[Remainder of page intentionally left blank; signature pages follow].

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Amendment as of the day and year first above written.

CHS TX, Inc., as Borrower

By: ______________________
Name: James Sprouse
Title: CFO

YESCARE CORP., as Holdings

By: ______________________
Name: James Sprouse
Title: CFO

CORTLAND CAPITAL MARKET SERVICES LLC,
as the Administrative Agent

By: ______________________
Name: Pinju Chiu
Title: Associate Counsel

M2 LOANCO, LLC, as a Lender

By: ______________________
Name: ______________________
Title: ______________________