# EXHIBIT U

**EIGHTH AMENDMENT TO**
**THIRD AMENDED AND RESTATED CREDIT AGREEMENT**

This EIGHTH AMENDMENT TO THIRD AMENDED AND RESTATED CREDIT AGREEMENT (this "Amendment"), dated as of July 30, 2025 but effective as of and from January 1, 2024 (the "Eighth Amendment Effective Date"), is entered into by and among CHS TX, Inc., a Texas corporation (the "Borrower"), YesCare Corp., a Texas corporation ("Holdings"), Alter Domus, successor-by-merger to Cortland Capital Market Services LLC, as Administrative Agent (the "Administrative Agent"), and M2 LOANCO, LLC (the "Lender").

**RECITALS:**

WHEREAS, the Borrower, Holdings, the Administrative Agent and the Lender are the current parties to that certain Third Amended and Restated Credit Agreement, dated as of August 17, 2020 (as amended by the First Amendment, dated as of July 12, 2021, the Second Amendment, dated as of July 12, 2021, the Third Amendment, dated as of September 30, 2021, the Fourth Amendment and Waiver, dated as of April 29, 2022, the Fifth Amendment and Assumption, dated as of May 5, 2022, the Sixth Amendment, dated December 20, 2023, and the Seventh Amendment, dated as of February 26, 2024, collectively, the "Existing Credit Agreement"; as amended by this Amendment and as may be further amended, restated, amended and restated, supplemented or modified from time to time, the "Credit Agreement"); and

WHEREAS, the parties hereto (which includes the sole Borrower and the sole Lender as of the date hereof), subject to the conditions of this Amendment and the Credit Agreement, wish to amend the Existing Credit Agreement on the terms set forth herein.

**AGREEMENTS:**

NOW, THEREFORE, in consideration of the foregoing and the agreements, representations, warranties, promises and covenants set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Section 1. Defined Terms. All capitalized terms which are not defined hereunder shall have the same meanings as set forth in the Credit Agreement.

Section 2. Amendments to the Existing Credit Agreement. Effective as of the Eighth Amendment Effective Date, and subject to the terms and conditions set forth in this Amendment, each of the parties hereto agrees as follows:

(a) Section 1.01 of the Existing Credit Agreement is hereby amended by adding the following new defined terms in their proper alphabetical order:

(i) "Adar Management Services Agreement" means the management services agreement, dated as of March 6, 2025, among the Company, Holdings, and Adar Management, LLC.

(ii) "Adar Security Agreement" means the security agreement, dated as of March 6, 2025, among the Company, Holdings, and Adar Management, LLC.

(iii) "Designated Related Parties" means M2 LoanCo, LLC and any other Person that is, directly or indirectly, under common control with M2

LoanCo, LLC or its equity holders (including any affiliate or portfolio company of the equity holders), other than the Administrative Agent or any Person acting in its capacity as a party to this Agreement. The term "Designated Related Parties" shall include, without limitation, M2 HoldCo, LLC, Perigrove 1018, LLC, Perigrove LLC, CHS Employee Group, LLC, CHS Staffing, LLC, Geneva Consulting, LLC, Pharmacorr, LLC and SIGMA Risk Management, LLC. The Parties agree that for purposes of this Agreement, in no event will Adar Management, LLC be deemed to be a Designated Related Party.

(iv) "Eighth Amendment Effective Date" means January 1, 2024.

(v) "Related Party Balance" means, as of any date of determination, the net amount owed by the Borrowers to, or owed to the Borrowers by, the Designated Related Parties (excluding, in each case, any amounts payable under this Agreement), as determined from Holdings' internal books and records in accordance with its standard intercompany accounting practices; provided, that the Related Party Balance shall exclude any temporary cash advances or pre-funding by the Borrowers or Holdings to CHS Employee Group, LLC in connection with payroll or staffing services, to the extent such amounts are made solely to accommodate timing differences between payroll cutoffs and month-end or quarter-end dates.

(b) The definitions of "Applicable Rate", "Geneva Management Services Agreement" and "Geneva Security Agreement" in Section 1.01 of the Existing Credit Agreement are deleted in their entirety. All references in the Credit Agreement to the "Geneva Management Services Agreement" and the "Geneva Security Agreement" shall, from and after the Eighth Amendment Effective Date, be deemed to refer to the Adar Management Services Agreement and the Adar Security Agreement, respectively, as each such term is defined above.

(c) The definition of "Base Rate" in Section 1.01 of the Existing Credit Agreement is deleted in its entirety and the following is substituted therefor:

"Base Rate" means 10% per annum.

(d) The definition of "Consolidated EBITDA" in Section 1.01 of the Existing Credit Agreement is modified by deleting clause (xiii) in its entirety and the following is substituted therefor:

(xiii) costs incurred in the start-up of a new contract which are incurred before the start date for the provision of services or after the start date for the provision of services if the costs are one-time in nature related to the start-up of the contract and are not expected to reoccur on a routine basis in the provision of services under the contract;

(e) The definition of "Default Rate" in Section 1.01 of the Existing Credit Agreement is deleted in its entirety and the following is substituted therefor:

"Default Rate" means the Base Rate plus 2% per annum.

(f) The definition of "Loan" in Section 1.01 of the Existing Credit Agreement is deleted in its entirety and the following is substituted therefor:

"Loan" means the single term loan outstanding under this Agreement as of the Eighth Amendment Effective Date, reflecting the principal balance set forth in Section 2.04(c) of this Agreement, as may be adjusted in accordance with the terms of this Agreement from time to time. For the avoidance of doubt, all other loan types and tranches referenced in this Agreement prior to the Eighth Amendment Effective Date are no longer outstanding and shall be disregarded for purposes of interpretation and enforcement of this Agreement, and any corresponding provisions in this Agreement that relate solely to historical loan Types or Classes that no longer exist as of the Eighth Amendment Effective Date shall be of no further force or effect.

(g) The definition of "Maturity Date" in Section 1.01 of the Existing Credit Agreement is deleted in its entirety and the following is substituted therefor:

"Maturity Date" means June 30, 2031.

(h) Section 2.03(a)(i)(C) of the Existing Credit Agreement is hereby deleted in its entirety and the following is hereby substituted therefor:

any prepayment of the Loan shall be in any principal amount.

(i) Sections 2.03(b)(i), (ii), (iv), and (v) of the Existing Credit Agreement are hereby deleted in their entirety.

(j) Section 2.04 of the Existing Credit Agreement is hereby deleted in its entirety and the following is substituted therefor:

2.04 Principal Balance Adjustments.

(a) Related Party Balance Offset. The parties acknowledge and agree that, immediately prior to the Eighth Amendment Effective Date, the Related Party Balance equaled $42,110,398.42. Such amount is hereby applied against the principal balance of the Loan as of the Eighth Amendment Effective Date.

(b) Debt Forgiveness. The Lenders further agree to forgive and reduce the principal balance of the Loan by $17,000,000.00 as of the Eighth Amendment Effective Date.

(c) Principal Balance. After giving effect to the offset and forgiveness described in Sections 2.04(a) and (b) above, the Borrowers and the Lenders agree that the outstanding principal balance of the Loan is $66,098,243.00 as of the Eighth Amendment Effective Date.

(d) Related Party Payments. Following the Eighth Amendment Effective Date, Holdings shall, within fifteen (15) Business Days after the end of each calendar quarter, deliver to the Administrative Agent a written certificate setting forth the Related Party Balance as of such quarter-end. If the Related Party Balance reflects a net amount payable by the Designated Related Parties to the Borrowers, such amount shall be applied to reduce the outstanding principal balance of the Loan as of such quarter-end. If the Related Party Balance reflects a net amount payable by the Borrowers to the Designated Related Parties, such amount shall be applied to increase the outstanding principal balance of the Loan as of such quarter-

end. Each such certificate shall be conclusive absent manifest error unless the Administrative Agent notifies Holdings of a dispute within fifteen (15) Business Days after receipt.

(e) Acknowledged Quarterly Balances. The parties acknowledge and agree that, for each of the calendar quarters ending on the dates set forth below, the aggregate amount of Related Party Payments applied in accordance with Section 2.04(d) and the resulting outstanding principal balance of the Loan are as follows:

| Calendar Quarter End | Related Party Payments Applied | Principal Balance of Loan |
|---|---|---|
| March 31, 2024 | $5,372,117 | $62,378,582 |
| June 30, 2024 | $3,966,631 | $59,971,415 |
| September 30, 2024 | $2,115,204 | $59,355,496 |
| December 31, 2024 | $7,664,686 | $53,174,698 |
| March 31, 2025 | $3,400,789 | $51,103,276 |
| June 30, 2025 | $10,511,418 | $41,869,439 |

Notwithstanding anything to the contrary, the amounts set forth above shall be deemed accurate, binding and not subject to further adjustment or recalculation, and shall be used for all purposes under this Agreement and the Parties hereto acknowledge and agree that the Administrative Agent shall have no liabilities for relying upon such amounts.

(k) Section 2.06(a) of the Existing Credit Agreement is hereby deleted in its entirety and the following is substituted therefor:

Subject to the provisions of Sections 2.06(b) and (e), the Loan shall bear interest on the outstanding principal amount thereof from the applicable borrowing date at a rate per annum equal to the Base Rate.

(l) Notwithstanding anything to the contrary in Section 2.06 or elsewhere in the Existing Credit Agreement, interest on the Loan shall be payable quarterly in arrears, unless Holdings elects, by written notice to the Administrative Agent no later than five (5) Business Days after the end of a calendar quarter, to capitalize all or a portion of the accrued but unpaid interest for such quarter. Upon such election, the amount of interest so capitalized shall be added to the principal balance of the Loan and shall thereafter accrue interest on the same terms.

(m) Section 7.11 of the Existing Credit Agreement is hereby deleted in its entirety and the following is hereby substituted therefor:

7.11 Financial Covenant. Permit Consolidated EBITDA for any fiscal quarter ending on the dates set forth below to be less than set forth opposite such date below:

| Fiscal Quarter Ending Date | Amount |
|---|---|
| March 31, 2025 | $1,000,000 |
| June 30, 2025 | $1,000,000 |
| September 30, 2025 | $2,000,000 |
| December 31, 2025 | $2,000,000 |

| | |
|---|---|
| March 31, 2026 | $2,000,000 |
| June 30, 2026 | $5,000,000 |
| September 30, 2026 | $10,000,000 |
| December 31, 2026 | $15,000,000 |
| March 31, 2027 | $18,000,000 |
| June 30, 2027 | $21,000,000 |
| September 30, 2027 | $24,000,000 |
| December 31, 2027 | $27,500,000 |
| Thereafter | $30,000,000 |

Section 3. Representations and Warranties. To induce the Administrative Agent and the Lender to enter into this Amendment, the Borrower and Holdings represent and warrant that as of the Eighth Amendment Effective Date, after giving effect to this Amendment:

(a) Representations and Warranties. The representations and warranties of the Borrower and Holdings set forth in the Credit Agreement and the other Loan Documents are true and correct in all material respects (except to the extent such representation or warranty is already qualified by materiality or the occurrence of a Material Adverse Effect) as of the date hereof, except to the extent such representations and warranties refer to an earlier date, in which case such representations and warranties are true and correct in all material respects (except to the extent such representation or warranty is already qualified by materiality or the occurrence of a Material Adverse Effect) as of such earlier date.

(b) Corporate Authority. (i) The Borrower and Holdings have the right and power and are duly authorized to execute this Amendment and to perform and observe the provisions of this Amendment, (ii) this Amendment has been duly executed and delivered by the Borrower and Holdings and is the legal, valid and binding obligation of the Borrower and Holdings, enforceable against the Borrower and Holdings in accordance with its terms, subject to applicable bankruptcy, insolvency and similar laws affecting the enforceability of creditors' rights generally and to general principles of equity, and (iii) the execution, delivery and performance by the Borrower and Holdings of this Amendment do not and will not (A) contravene the terms of any of such Person's Organization Documents; (B) conflict with or result in any breach or contravention, or the creation of any Lien (other than Liens permitted under Section 7.01 of the Credit Agreement), of or under (1) any Contractual Obligation to which such Person is a party or affecting such Person or the properties of such Person or any of its Subsidiaries or (2) any order, injunction, writ or decree of any Governmental Authority or any arbitral award to which such Person or its property is subject; or (C) violate any Law, except in each case referred to in clause (B)(1), (B)(2) or (C), to the extent that such contravention, conflict, breach or violation could not reasonably be expected to have a Material Adverse Effect.

Section 4. Reference to and Effect on Loan Documents.

(a) On and after the Eighth Amendment Effective Date, each reference in the Existing Credit Agreement to "*this Agreement*", "*hereunder*", "*hereof*", "*herein*" or words of like import, and each reference in the other Loan Documents to the Existing Credit Agreement, shall mean, and be a reference to, the Credit Agreement.

(b) This Amendment is a Loan Document.

Section 5. Effectiveness. This Amendment, including the amendment of the Existing Credit Agreement as set forth in Section 2 hereof, shall become effective as of the Eighth Amendment Effective Date upon due execution and delivery by the Borrower, Holdings, the Administrative Agent and the Lender.

Section 6. Miscellaneous.

(a) Successors and Assigns. This Amendment shall be binding on and shall inure to the benefit of the Borrower, Holdings, the Administrative Agent and the Lenders and their respective successors and assigns as set forth in the Loan Documents.

(b) Entire Agreement. This Amendment and the Loan Documents, as amended hereby, constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all other understandings, oral or written, with respect to the subject matter hereof.

(c) Reaffirmation. Each of the Borrower and Holdings (each, a "Reaffirming Party") acknowledges and agrees that, after giving effect to this Amendment, all of its respective obligations under the Credit Agreement and the other Loan Documents to which it is a party are reaffirmed, and remain in full force and effect on a continuous basis. Each Reaffirming Party acknowledges that the obligations and liabilities of the Borrower under, and as defined in, the Existing Credit Agreement continue in full force and effect on a continuous basis as obligations and liabilities of the Borrower under, and as defined in, the Credit Agreement, subject to the terms of this Amendment. As of the Eighth Amendment Effective Date, each Reaffirming Party reaffirms each Lien it granted to the Administrative Agent, and any Liens that were otherwise created or arose under each of the Loan Documents to which such Reaffirming Party is party and reaffirms the guaranties made in favor of the Administrative Agent under each of the Loan Documents to which such Reaffirming Party is party, which Liens and guaranties shall continue in full force and effect during the term of the Credit Agreement and any amendments, amendments and restatements, supplements or other modifications thereof and shall continue to secure the Obligations (including, for the avoidance of doubt, the repayment of, and related guarantees of, the Loan) of the Borrower, Holdings and the Guarantors from time to time, and secure the obligations of other Reaffirming Parties under any Loan Document, in each case, on and subject to the terms and conditions set forth in the Credit Agreement and the other Loan Documents.

(d) Headings. Section headings in this Amendment are included herein for convenience of reference only and shall not constitute a part of this Amendment for any other purpose.

(e) Severability. Wherever possible, each provision of this Amendment shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Amendment shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Amendment.

(f) Counterparts. This Amendment may be executed in any number of separate original counterparts (or telecopied counterparts with original execution copy to follow) and by the different parties on separate counterparts, each of which shall be deemed to be an original, but all of such counterparts shall together constitute one agreement. Delivery of an executed counterpart of a signature page to this Amendment by telecopy or pdf format shall be effective as delivery of a manually executed counterpart of this Amendment. The words "execution", "signed", "signature" and words of like import in this Amendment shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity and/or enforceability as a manually executed signature or the use of a paper based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

(g) Incorporation of Credit Agreement Provisions. The provisions contained in Section 10.14 (Governing Law; Jurisdiction; Etc.) and Section 10.15 (WAIVER OF JURY TRIAL) of the Credit Agreement are incorporated herein by reference to the same extent as if reproduced herein in their entirety.

(h) Lender Direction. The Lenders hereby authorize and direct the Administrative Agent to consent to this Amendment and to execute and deliver this Amendment as the Administrative Agent.

[Remainder of page intentionally left blank; signature pages follow].

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Amendment as of the day and year first above written.

CHS TX, Inc., as Borrower

By: J. Scott King
Name: J. Scott King
Title: Chief Legal Officer

YESCARE CORP., as Holdings

By: J. Scott King
Name: J. Scott King
Title: Chief Legal Officer

ALTER DOMUS, successor-by-merger to CORTLAND CAPITAL MARKET SERVICES LLC,
as the Administrative Agent

By: ______________________________
Name: ____________________________
Title: _____________________________

M2 LOANCO, LLC, as a Lender

By: ______________________________
Name: Isaac Lefkowitz
Title: Director